Beach v. Shaw.

---

MONROE SPECIAL TERM, October, 1848.    *Welles,* Justice.

## BEACH *vs.* SHAW.

### SHAW *vs.* BEACH & HEWETT.

A final decree in a court of equity, containing special provisions, cannot be entered, unless it has been brought to the notice of the court, and the sanction of the court obtained.

In a court of equity, no order or decree, excepting in a few specified cases provided for by rule, which only relate to the form and manner of proceeding, and

Beach *v.* Shaw.

do not affect the merits, can ever be taken by default, or without the actual direction or approval of the court.

Accordingly, where a final decree, purporting on its face to have been made at a general term of the court, was entered in vacation, upon the report of a referee, in pursuance of a stipulation between the parties, without any direction or consent of the court having been given, such decree, and all subsequent proceedings, were set aside, as irregular.

IN EQUITY. Motion to set aside decree and subsequent proceedings. Beach and Shaw, the parties in the first suit, became partners on the 12th day of April, 1843, in carrying freight on the Erie canal, and in towing boats. Beach filed his bill in chancery, before the vice chancellor of the the 8th circuit, on the 13th of September, 1845, to wind up the concerns of the partnership. Shaw put in his answer on the 3d September, 1846. A cross-bill was filed on the 3d September, 1846, by Shaw, against Beach and Hewett, the defendants in the second suit. On or about the 4th December 1846, Beach and Hewett put in their answers to the cross-bill. No proofs were taken in those causes until on or about the 29th of September, 1847, when by consent, the causes were referred to Enos Pomeroy, Esq., to take the proofs therein, and an order was entered with the clerk of Monroe county accordingly. Subsequently, and on the 14th of February, 1848, a stipulation was signed by the solicitors for the respective parties, waiving the reference before Pomeroy, and submitting the matters involved in the suits, to Elias Weed. Weed made a report in the causes, dated April 15, 1848, by which Shaw was found indebted to Beach in the sum of $1805, 27. About the 3d day of May, 1848, a decree was entered in said causes, based on that report, for the sum of $1805,27, and an execution afterwards issued to the sheriff of Monroe county. Shaw was unable to obtain Weed's statement of allowances, &c. so as to know whether he had considered matters not submitted to him, until the early part of July, 1848, and for that reason could not, and did not, take steps to prevent the entering the decree. But he afterwards obtained Weed's full statement. The stipulation by which the parties referred the matters in controversy to the referee Weed, after entitling the causes proceeded as follows: " The above two causes being at issue,

and having been referred to Enos Pomeroy, Esq. to take proofs, &c. it is hereby stipulated by and between the parties, that the reference be waived, and instead thereof that the said causes and all matters involved therein be submitted for final adjudication and settlement to Elias Weed of Buffalo, whose decision as to the matters aforesaid being certified or reported by him, shall be the authority for and basis of a final decree in each of said causes in accordance with his report, which decree may be entered by either party on receipt of said report, and said decrees when so entered at any time in term or vacation shall be final and irreversible, and against which no exception or appeal can or may be entered." The stipulation then proceeded to provide what papers, books and documents should be laid before the referee, and in relation to the manner in which the referee should proceed, and the assumptions upon which he should make his decision. It then provided that the referee should by his report order that a specific sum should be paid in gross by one party to the other, without costs. That any partnership existing, or which had existed between.the parties, be dissolved. That Shaw and Beach should execute mutual releases of all rights and demands growing out of their partnership or otherwise, excepting as modified by said decree, to be entered, and that Shaw should execute to Hewett his receipt in full of all demands, or release all demands upon the report being made. The stipulation was dated 14th February, 1848, and signed by the solicitors for the respective parties. No order of reference was entered upon the stipulation. On the 15th of April, 1848, the referee made his report by which he found due to the said Ebenezer S. Beach from the said Horatio N. Shaw, the sum of $1805,27, and reported and decreed " that the same be paid with interest from the date hereof, without costs of suit." The referee also reported and decreed a dissolution of the partnership between Beach & Shaw. Also that upon the payment of the said sum of money and interest, said Beach & Shaw should execute and deliver mutual releases. Also that any partnership between Shaw & Beach, and Hewett, or between Beach & Hewett be dissolved.. Also that Shaw execute

to Hewett a receipt in full, &c. The report was entitled in both suits. The decree, by its caption purported to be made "at a term of the supreme court in equity, held for the state of New-York at the city of Rochester, on the       day of one thousand eight hundred and forty-eight. Present, Hoyt, Welles and Selden, justices."

The second above entitled cause was then entitled. It then proceeded to recite the reference; "and that said Elias Weed, having made his report in said cause, on reading and filing said report, and on motion of M. Chapin, solicitor for the defendant, it is hereby ordered, adjudged and decreed by this court, that the said report be, and the same is hereby confirmed. And it is further ordered, adjudged and decreed, pursuant to said stipulation and report, that the said defendants are not indebted to the said plaintiff, connected with any matters mentioned in the bill in this cause, but that each party shall pay his own costs."

This decree, as appeared by the affidavit of the solicitor for Beach, was settled by the clerk of Monroe county and entered on the 3d day of May, 1848, on notice to the solicitor of Shaw, and enrolled on the 15th day of June, and an execution issued and delivered to the sheriff of Monroe, returnable in sixty days. The decree was not actually ordered by the court nor any justice thereof; nor was the reference to Weed, or his report, or the decree, ever brought to the notice of the court or any justice thereof in any manner whatsoever, until after such decree was entered, and not then for any purpose except by Shaw, with a view to have it set aside.

A motion was now made on behalf of Shaw for an order setting aside the decree and subsequent proceedings and if the court should entertain jurisdiction, &c. asking for a new reference, &c.

*H. K. Jerome & O. Hastings*, for the motion.

*M. Chapin & C. Tucker*, opposed.

Beach *v.* Shaw.

WELLES, J.   The view I have taken of this case renders it unnecessary to examine or consider the merits of the award or decision of the referee.   The bill and cross-bill were filed before the adoption of the new constitution, and on the first Monday in July, 1847, both causes were in such a condition as to be, and were, *ipso facto* transferred into this court by virtue of the 3d section of the 14th article of that instrument.   It is the duty of this court to proceed with, and dispose of, the suit in the same manner, and upon the same principles, as govern courts of equity, and as the late court of chancery would have done ; subject to such rules and regulations as have been introduced by the new constitution and the *statutes* which have been passed under it by the legislature, and the rules of this court which have been adopted.   In reference to this class of cases, this is as much a court of equity as of law.

It has been repeatedly decided, where parties agree to refer a cause pending in a court of law, not referable under the statute, *and that judgment may be entered upon the report of the referees*, and a rule of reference is entered to that effect, that a judgment entered upon the report of such referees, in pursuance of such agreement, is regular and valid.   I am not aware, however, that this rule has ever been applied to a court of equity. I have always supposed that no order or decree in chancery could be regularly entered except those denominated common orders, which the parties may have entered at their peril by the clerk or register, such as orders to produce witnesses, to close proofs, and the like, which are specially provided for by rules of court, without the order of the court.   More particularly, that a final decree containing special provisions could not be entered, unless the same was first brought to the attention of the court, and its sanction obtained.

One view of the theory of a court of equity as originally instituted is, that its halls are never to be resorted to by litigants, excepting where a court of law is inadequate, either from the limitation of its powers, or its mode of proceeding, to afford full and complete remedy or relief to the party complaining, or where such remedy or relief is doubtful or obscure.   Courts of

law being bound down to fixed and invariable forms of judgments in general terms altogether absolute, for one party or the other; while one of the most distinctive features of courts of equity is that they can adapt their decrees to all the varieties of circumstances which may arise, and adjust them to all the peculiar rights of all the parties in interest. In the language of another, "it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." The jurisdiction of courts of law is said to be ordinary and general, while that of courts of equity is extraordinary and specific. In the former the practitioners are permitted to use its seals and the names of its clerks to process, without restriction or limitation, being only responsible for the abuse of the privilege; while in the latter the registers and clerks are not to suffer any process to pass their seals, if it does not appear to be duly warranted.

In courts of law judgments are entered daily by confession and by default, and final process issued and executed, without the existence of the suit ever being brought to the knowledge of the court, or any member of it, and without any actual adjudication taking place. Not so in a court of equity. There no order or decree, excepting in a few specified cases, provided for by rule, and which only relate to the form and manner of proceeding, and do not affect the merits, but which are designed only as an order of proceeding, with a view to bring the merits before the court, can ever be taken by default, or without the *actual* direction or *approval* of the court. There are a variety of cases where it has become a matter of course, under certain circumstances, to make certain decrees in favor of the plaintiff, in a suit in equity, where the defendant fails to appear, and where the bill has been taken as confessed by the defendant; and yet I am not aware of a case where the plaintiff's solicitor would be at liberty to enter such decree without the actual direction or sanction of the court, upon the matter being brought to its notice. I have frequently known cases where special decrees have been drawn up and agreed to in amicable suits, both parties consenting by written stipulation to

Beach v. Shaw.

have them entered, and yet in the cases referred to, the consent of the court was deemed necessary in order to their validity. Since the argument in this case I have made inquiry of one experienced ex-clerk in chancery, as to the practice in this respect in his office, who informed me that for a period of more than twelve years, during which he held the office, not a case had occurred where an order or decree was allowed to be entered without the approval of the court, except such common orders as are expressly allowed by the standing general rules of the court. The practice of settling the form of a special decree or order, before the clerk, after the court had made its decision, was mentioned, but was not regarded a departure from the rule, as it was only reducing the actual decision of the court into a form to become a matter of record.

In the present case the decree was entered in vacation, without any direction or consent of the court, and purports upon its face to have been made at a general term. The plaintiff's counsel contends that the defendant is estopped by his agreement in the stipulation to refer the causes, from objecting to the decree.

The stipulation is about as strong in this respect as language could make it, and I have no doubt both parties intended, at the time of entering into it, that the very same course of practice should be pursued as the plaintiff's solicitor has adopted. Even if that be so, it does not alter the question, in the view I have taken. Suppose the parties had, without suit, entered into an agreement to refer their controversies, and that a decree of the court of chancery should be entered upon the report or award of the referee; I apprehend it would not be contended that a decree of the court could be entered upon the report, or that the provision of the agreement that it might be done, would be of any validity. It would be different if the submission contained an agreement *that a judgment in a court of law* might be entered upon the award. (2 *R. S.* 541, § 1, *&c.*) The statute seems to me to afford another illustration of the positions I have assumed, and to show that the court of chancery is never to be made to say, by decrees or orders entered by the parties,

what it never has in fact said.   It is not necessary to decide whether this court could make a decree upon application of the plaintiff, founded on the report of the referee.   The court has had nothing to do with this reference, so far.   It is the act of the parties only.   Indeed, so far as appears, the court has never had its attention drawn to the case at all, until this application was made to set aside proceedings had in its name, but without its authority.   I think it may well be doubted whether the effect of the proceedings of the parties is not to take the causes out of court; and in that case I suppose the plaintiff would be left to his remedy by action on the award.   That question would more properly arise should the plaintiff apply to the court to have the report in fact confirmed and a decree entered upon it in pursuance of the stipulation.

I think, for the reasons mentioned, that the decree was irregular and should be set aside, with all proceedings on the part of the plaintiff, subsequent to its entry.   But as the defendant has agreed in the stipulation of reference, that the plaintiff should pursue the course in regard to entering the decree, which he has taken, and as the plaintiff's proceedings appear to have been in good faith, no costs are allowed.

Motion granted.

---

DUTCHESS SPECIAL TERM, October, 1848.   *Barculo*, Justice.